*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

*In re* ROGERS/ROBINSON, Minors.

UNPUBLISHED
May 7, 2019

No. 344755
Oakland Circuit Court
Family Division
LC No. 15-833368-NA

Before: BOONSTRA, P.J., and METER and FORT HOOD, JJ.

PER CURIAM.

Respondent appeals by right the trial court's order terminating her parental rights to her minor children, JSR, JVR, and JBR, under MCL 712A.19b(3)(g) (failure to provide proper care and custody) and (j) (children are reasonably likely to be harmed if returned to the parent's home).[1] We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case arises out of respondent's long struggle with alcohol abuse and its effect on her children. In 2015, petitioner, the Department of Health and Human Services (DHHS), filed a petition to remove JSR and JVR from respondent's care after a June incident in which respondent had left JVR, then two years old, at home unsupervised while she drove to JSR's school to pick her up. School officials observed respondent's behavior and believed that she was too intoxicated to drive; an employee of the school drove respondent and JSR home. The police were contacted; respondent was ultimately taken to the hospital after on-the-scene testing revealed that respondent's blood alcohol concentration (BAC) was .307, over three times the legal limit for drunk driving. The following month, a DHHS worker visited respondent's home and believed that respondent was intoxicated while caring for the children. Respondent was again hospitalized after testing revealed a BAC of .5. In December 2015, after respondent

---

[1] The court had previously terminated the parental rights of the father of JSR and JVR. Proceedings regarding JBR's father continued after respondent's parental rights were terminated. Neither father is a party to this appeal.

completed a substance abuse treatment program and began attending weekly substance abuse support groups and therapy, the trial court returned the children to respondent and closed the case.

In 2017, petitioner filed a petition requesting the removal of JSR, JVR, and newborn JBR, and the termination of respondent's parental rights to the children. The petition alleged that in September 2017, respondent had failed to pick JSR up from a bus stop and did not retrieve her for several hours even after learning that JSR had been taken to the police station. Further, the petition alleged that in October 2017, respondent was transporting JVR and JBR in her car when she was stopped by Clarkston police. Testing revealed her BAC to be .253.

Respondent pleaded no contest to the allegations in the petition with regard to the exercise of the court's jurisdiction and the existence of statutory grounds for termination under MCL 712A.19b(3)(g) and (j). After hearing testimony from Sarah Perry, a Child Protective Services (CPS) worker, the trial court determined that statutory grounds existed to exercise its jurisdiction and to terminate respondent's parental rights.

The trial court then held a best-interest hearing. Respondent and her evaluating psychologist, Sylvie Bourget, testified to respondent's mental health and alcohol abuse history. When respondent was 18 years old, she was diagnosed with depression. She testified that she received therapy off and on through college. Respondent graduated from the University of Michigan and then worked for several companies in sales.

Respondent testified that, by the time of the best-interest hearing, she had struggled with alcohol abuse for about 10 years. When she was about 30 years old, in 2008, she was arrested for operating while impaired (OWI). Around the same time, she had a nervous breakdown and was hospitalized in a long-term facility for mental health issues and alcohol abuse. She was then released to adult foster care. Respondent's diagnosis at that time was major depressive disorder. When she felt depressed, she did not have much energy, she had trouble getting out of bed, and it was hard for her to work. She was in therapy "a couple times" for the major depressive disorder and was prescribed anti-depressant medication. Respondent admitted that she only attended therapy and took medication care when she was "super depressed."

In 2010, respondent was approved for Social Security Disability payments. In 2011, she received a secondary degree in television, video, and film. She worked in programming until she gave birth to JSR in 2012, but did not work thereafter. She did not take mental health medications while she was pregnant or breastfeeding. Respondent testified that she was very depressed after the birth of her first child and had marital problems; nonetheless, she quickly again became pregnant with JVR.

Respondent testified that she did not drink alcohol between 2010 and 2015. On the first day of the best-interest hearing, respondent testified that she chose not to resume taking medications in 2014 (after she ceased breastfeeding JVR) because she was "feeling okay." She admitted that she already knew from the past that when she was off her medication, she did not function—she would feel "really sad . . . have racing thoughts . . . [she] can't really focus," and she has "really, really bad anxiety." Respondent admitted that it would be very difficult to parent in those situations. On the second day of the best-interest hearing, respondent testified that she

had become "confused" during her testimony and that she actually did return to taking medication for depression in 2014.

In 2015, respondent relapsed after her uncle died. When the children were removed in 2015, she received intensive substance abuse treatment. She also took medication and attended Alcoholics Anonymous (AA) meetings once a week.

Respondent relapsed again in 2017 after a series of events, including a car accident in April 2017, a pneumonia diagnosis, and the death of a family member. She was again arrested for OWI in 2017. After the children were removed in November 2017, respondent admitted herself to an inpatient mental health facility. Respondent was diagnosed with bipolar disorder, obsessive compulsive disorder, and alcohol abuse. Reports from the facility indicated that she was suicidal and psychotic during her stay, but respondent later denied being suicidal at that time. Bourget testified that this denial was concerning, but noted that respondent was in continuing treatment and not experiencing ongoing suicidal thoughts. Respondent readmitted herself to the facility in January 2018, after running out of her medication and failing to meet with a psychiatrist to obtain refills. After her release, she began participating in out-patient medication management.

Respondent testified that her current treatment was distinguishable from any other treatment she had ever received because it was focused on the duality of her problems with bipolar disorder and alcohol abuse. She testified that she was receiving weekly therapy and was seeing a psychiatrist monthly. She further testified that she now understands that she will be in ongoing treatment for life. Respondent acknowledged that she would be on probation for the OWI offense for two years. She was required to attend AA three times a week, to attend therapy, and to participate in random testing as conditions of her probation.

Bourget opined that bipolar disorder is a "serious diagnosis" and that respondent has "very significant mental health issues" that are exacerbated by alcohol abuse. By the time of the best-interest hearing, she had been sober for a few months. Bourget testified that it is impossible to know whether difficulties in life would cause respondent to relapse again. Bourget could not speculate about how long it would take before respondent could maintain sobriety consistently. Bourget declined to state on direct examination when it would be safe for the children to be returned to respondent's care, but opined on cross-examination that respondent would need at least six months' sobriety. Moreover, if the children were returned to respondent's care and respondent relapsed, the children would be exposed to a risk of harm.

Bourget testified that an alcoholic parent can cause risks for a child, including emotional repercussions, the possibility of neglect and abuse, poor supervision, and endangerment. She further testified that respondent was then maintaining sobriety under court-ordered probation, but that there was no information—other than her self-reported motivation—that she would be sober absent a court order. Bourget testified that she nevertheless saw potential in respondent and that, with more time, there was a possibility for progress and success.

Bourget ultimately opined that the termination of respondent's parental rights would not be in the children's best interests at that time. She considered respondent's bond with the children, their ages, the fact that the first removal period was short, respondent's motivation,

respondent's decision to seek treatment, and her almost six-year sobriety before relapsing in 2015. Although Bourget did not know how respondent's mental health issues were addressed during the 2015 case, she thought that, in the 2017 case, there was a better understanding of the relationship between respondent's alcohol abuse and her mental health issues, which contributed to her opinion that termination was premature. Bourget acknowledged that respondent knew that she needed help between 2015 and 2017, but only sought help when her children were removed.

Respondent testified that she has a very strong bond with her children because of all that they have been through together. She acknowledged that her children "may have" seen her drunk, but indicated that she mostly drank when they were asleep. She testified that she was not thinking clearly when she tried to pick her daughter up from school when she was drunk.

At the time of the best-interest hearing, respondent did not have permanent housing and was residing in transitional housing. She testified that she was working with the Community Housing Network to find housing. Respondent received Social Security disability payments for her mental health issues in the amount of $1,286 per month. She had received child support in the past, but was not currently receiving any. She had not been employed since her children were born. She was enrolled in Michigan Rehabilitative Services' Ticket to Work program, which provided employment services and training; respondent testified that she hoped to obtain at least a part-time job (Tr II, p 34).

Perry testified and opined that the children would be at risk if they were returned to respondent. She was concerned about the potential for relapse, given the past occurrences of relapse, and the short time between the 2015 reunification and the last relapse. Perry acknowledged that respondent and her children shared a significant bond, but nevertheless felt that termination would be necessary for the children to achieve stability. Perry testified that JSR and JVR were placed with their maternal great-aunt, who is very involved in their lives. The foster care worker, Dewan Roy Adams, similarly testified that JSR and JVR were doing "awesome" in their great-aunt's home, and that their great-aunt planned to adopt them. Perry testified that she believed that the great-aunt would facilitate visitation with JBR, who was then placed with his maternal cousin. Perry further testified that, if respondent's rights were not terminated, she did not know how much time would need to pass before she would be comfortable having the children returned.

Stephanie Trayer-Griffith, respondent's parent partner, testified that she had provided respondent with resources for housing and moral support. She testified that respondent appeared to have taken responsibility for her actions and that she is "very determined." However, Trayer-Griffith could not opine about whether respondent would remain sober, or if she was "well on her way to sobriety."

Latrece Bailey, respondent's parenting time case manager, testified that a bond existed between respondent and all three children. She had no major concerns over respondent's ability to parent as expressed through supervised parenting time visits.

The children's lawyer guardian ad litem (L-GAL) testified and opined that termination was in the children's best interests. The L-GAL opined that, if returned to respondent's care, the

children would be at substantial risk of harm from a relapse, especially given respondent's history of driving her car and transporting the children while extremely intoxicated.

After the best-interest hearing, the trial court issued a written opinion holding that the termination of respondent's parental rights was in the children's best interests. The trial court summarized respondent's situation as follows:

> The court notes the testimony that mother previously completed a parent agency agreement with substance abuse treatment, following removal of the children for substance abuse, and did not benefit from it. Additionally, significant evidence exists to support the assertion that mother has received years of alcohol and mental health treatments but-based on mother's testimony-has voluntarily stopped taking her medication and relapses when faced with life stressors. Mother is presently in a monitored and controlled environment, at Grace Center of Hope, and is essentially under court-ordered sobriety. Mother is unemployed, homeless, and receiving approximately $1,200 each month in social security disability.

The trial court noted that respondent did have a bond with her children, and that their placement with relatives was a factor that weighed against termination. Nonetheless, the trial court found that respondent's "continued relapses, lack of insight, and inability to maintain . . . stability and sobriety outweighs this presumption." The trial court noted that respondent was living in a controlled environment and that her sobriety was enforced by her probation, that respondent had only addressed her addiction and mental health issues after her children were removed or while on probation, and that there was no guarantee that respondent would not relapse when confronted with the stress of life as a single mother to three children. The trial court also noted that JVR and JBR had been subjected to respondent's driving while intoxicated and that their lives had been directly endangered by respondent's conduct.

The trial court issued an order terminating respondent's parental rights to all three children. This appeal followed. Respondent's sole claim on appeal is that the trial court erred by concluding that the termination of her parental rights was in the children's best interests.

## II. STANDARD OF REVIEW

This Court reviews for clear error any findings regarding a child's best interests. MCR 3.977(K); *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). "A trial court's decision is clearly erroneous '[i]f although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made.' " *In re Olive/Metts*, 297 Mich App 35, 41; 823 NW2d 144 (2012).

## III. ANALYSIS

Respondent argues that the trial court erred by determining that the termination of her parental rights was in the children's best interests. We disagree.

Once a statutory ground for termination is established, the trial court shall order the termination of parental rights if it finds that termination is in the child's best interests.

MCL 712A.19b(5). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). The trial court should weigh all the evidence available to it in determining a child's best interests. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). Factors relevant to a determination of a child's best interests include the child's bond to the parent, the parent's compliance with his or her case service plan, the parent's history of visitation with the child, the child's need for permanency, stability, and finality, the advantages of a foster home over the parent's home, and the possibility of adoption. *Id.* at 713-714. In addition, a child's placement with relatives is "an explicit factor to consider in determining whether termination was in the children's best interests." *Mason*, 486 Mich at 164, *Olive/Metts*, 297 Mich App at 41.

A preponderance of the evidence supports the trial court's determination that termination of respondent's parental rights was in the children's best interests. The trial court recognized that respondent loves her children and shares a bond with them. During supervised parenting time, respondent was attentive, engaged the children in conversations, played with them, and showed affection. When the children were in respondent's care, however, her parenting choices placed the children at significant risk of death or physical harm. In 2015, respondent left two-year-old JVR by herself while she drove—with a BAC of .307—and attempted to pick up JSR from school. Less than two months later, respondent was discovered at home with the two girls with a BAC of .5. Again in 2017, respondent drove with a BAC of .253 while JVR and the baby, JBR, were in the car. Respondent was taken to the hospital and treated for excessive alcohol ingestion on both of those instances. Respondent's evaluating psychologist testified that respondent knew that she needed help after her children were returned to her in 2017, and she did not seek it. Instead, without support, respondent predictably relapsed, resulting in her arrest and the children's removal yet again. Respondent's most recent relapse was evidence that she had failed to benefit from the extensive services provided to her in the prior proceedings.

The trial court heard evidence that respondent is college-educated and has a work history in sales and television programming, but had not worked since her oldest child was born in 2012, although she received Social Security disability payments. Moreover, she was homeless at the time of the best-interest hearing. Conversely, JSR and JVR were thriving in the home of their great-aunt. Perry testified that JSR and JVR have stability and comfort with their great-aunt, who is very involved in their lives. The great-aunt planned to adopt the girls, and Perry believed that the great-aunt would facilitate visitation with JBR, who was placed separately with a maternal cousin while his father was receiving reunification services.

Additionally, although respondent claims that the trial court did not give adequate weight to fact that the children were placed with relatives, the court repeatedly acknowledged that the children were placed with relatives, but it found that any presumption against termination of respondent's rights was outweighed by respondent's "continued relapses, lack of insight, and inability to maintain . . . stability and sobriety." See *Mason*, 486 Mich at 164, *Olive/Metts*, 297 Mich App at 41. Moreover, respondent's repeated endangerment of her children's lives when she drove with them while intoxicated was a substantial factor that weighed in favor of termination. It was not clear error for the trial court to prioritize the children's needs for stability, permanence, and safety. See *In re Foster*, 285 Mich App 630, 635; 776 NW2d 415 (2009).

Respondent further argues that her likelihood of relapse was never quantified and that the mere possibility of relapse should not have constituted a sufficient basis to conclude that termination was in the children's best interests. We do not disagree that it is impossible to predict when or if an alcoholic will relapse. However, respondent, who was 40 years old, had for more than 20 years abandoned treatments when she was feeling well. Over and over again, these periods without medication, therapy, or substance abuse treatment would result in the negative effects of her mental illness and alcoholism reasserting themselves. Respondent admitted that her past relapses involved stressors, such as an accident or a death in the family. As the trial court observed, "[a]s a single mother of three children . . . life's stresses will continue to be both present and prominent."

The record established that respondent was making an effort at recovery at the time of the best-interest hearing and had been sober for a few months. But Perry recalled that, in 2015, respondent had also been "very focused" on her treatment; she nevertheless relapsed quickly once her children were returned to her and the court terminated its jurisdiction. Again, during that relapse, respondent drove with two of her children in the car while intoxicated with a BAC more than three times the legal limit. Given respondent's repeated cycles of illness, recovery, and relapse, no one could estimate how much time respondent would need to obtain consistent sobriety, and Perry did not know when she would be comfortable returning the children to respondent. Based on this evidence, the trial court did not clearly err by finding that there was no reasonable likelihood that respondent's continued use of services would result in the stability and permanence that the children needed. *Mason*, 486 Mich at 152. The trial court did not clearly err by finding that termination of respondent's parental rights was in the children's best interests. *Id.*

Affirmed.

/s/ Mark T. Boonstra
/s/ Patrick M. Meter
/s/ Karen M. Fort Hood